

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0798-08

**ANNE ELIZABETH MURPHY, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FIRST COURT OF APPEALS
### HARRIS COUNTY

JOHNSON, J., delivered the opinion of the Court in which KELLER, P.J., and KEASLER, HERVEY, and COCHRAN, JJ., joined. WOMACK, J., filed a dissenting opinion in which MEYERS, PRICE, and HOLCOMB, JJ., joined.

### O P I N I O N

A jury convicted appellant of capital murder in the course of committing or attempting to commit robbery. Because the state did not seek the death penalty, the trial court assessed a sentence of life imprisonment without parole. TEX. PENAL CODE § 12.31(a). The First Court of Appeals affirmed the trial court's judgment and sentence. *Murphy v. State*, No. 01-07-00174-CR, 2008 Tex. App. LEXIS 2568 (Tex. App. – Houston [1st Dist.], delivered April 10, 2008)(not designated for publication). We granted appellant's petition for discretionary review.

**Direct appeal**

On direct appeal, appellant's points of error included claims asserting constitutional and statutory violations by the trial court: not informing the prospective jurors that she would be sentenced to life imprisonment without parole if found guilty of capital murder; and not allowing her to so inform or to question venire members on that subject. The court of appeals held that, because appellant failed to show that she was prevented from asking a particular proper question, she failed to preserve for review her complaints that she had been denied her constitutional right to effective assistance of counsel. *Murphy v. State*, *supra* at * 27. The court of appeals also held that the failure of the trial court to inform the venire that appellant would receive a mandatory life sentence if convicted of capital murder was non-constitutional error and was harmless because "nothing in the record indicates that such failure to inform the venire of this information denied appellant's right to a fair and impartial jury," thus appellant's substantial rights were not affected by the error. *Id*. at ** 28-33.

**Appellant's Grounds for Review**

We granted appellant's three grounds for review. Those grounds assert:

1) In this non-death capital murder case[,] appellant's constitutional claim that she was denied the effective assistance of counsel and due process of law was preserved for appellate review when the trial court refused to advise the venire that [appellant] would be sentenced without parole [sic] if convicted of capital murder when requested by trial counsel[,] as mandated by TEX. PEN. CODE ANN. § 12.31(b) and then prohibited counsel from doing so even though he failed to provide the court with a particularized question on the issue pursuant to *Sells v. State*, 121 S.W.3d 748 (Tex. Crim. App. 2003).

2) Because the trial court declined to advise the appellant's venire that she would be sentenced to life without parole as mandated by TEX. PEN. CODE ANN. § 12.31(b) and then prohibited her attorney from doing so during voir dire, [appellant] was denied the effective assistance of counsel and due process of law on this issue during voir dire[,] and the harm she suffered should be assessed under TEX. R. APP. P. 44.2(a).

3) Because the purpose of TEX. PEN. CODE ANN. § 12.31(b) is its own clearly stated

mandate that the venire in a non-death capital murder case shall know the guilty defendant will receive a sentence of life without parole, any review of the harm caused by the trial court's multiple failures to so inform the appellant's jury should be conducted in light of that stated purpose under TEX. R. APP. P. 44.2(b).

**Background**

TEX. PEN. CODE ANN. § 12.31(b) includes a provision that "[i]n a capital felony trial in which the state does not seek the death penalty, prospective jurors shall be informed that the state is not seeking the death penalty and that a sentence of life imprisonment without parole is mandatory on conviction of the capital felony."[1] The record reflects that, at the beginning of voir dire, and outside the presence of the venire, the trial court informed the parties of its position on revealing the automatic sentence of life without parole to the venire.

> I'm going to go on the record outside the presence of the jury. Before we begin jury selection, I have discussed with each side the issue regarding punishment in this case and discussing it on voir dire. This is a capital murder where the State is not seeking the death penalty, so in the event Ms. Murphy is convicted of capital murder, the sentence is automatic life without parole and I would be doing the sentencing, so it is my position that I'm going to tell this panel, if they convict her of capital murder, punishment is not an issue for them, it's just for me. And I don't intend to tell the panel and I don't want either side to tell the panel that it would be life without parole.

> I understand that there are – there will probably be lessers raised in this case and, of course, both sides have to qualify the panel on the punishment range on those lessers; but as far as the non-death capital punishment range, I would instruct the lawyers not to go into what that means, life without parole.

One of appellant's attorneys sought clarification of whether the trial court meant not to

---

[1] Section 12.31. Capital Felony

    (a) . . .

    (b) . . . In a capital felony trial in which the state does not seek the death penalty, prospective jurors *shall be informed* that the state is not seeking the death penalty *and* that a sentence of life imprisonment without parole is mandatory on conviction of the capital felony.

(Emphasis added.)

mention the punishment for a conviction for capital murder, i.e. "not to define life without parole, but not to say it at all?" The trial court responded,

> Right. That's what I'm – yes, because I don't think it's an issue that they need to know about, or it's not for them to decide. So if they convict her of capital murder, then they need to know the trial is over for them at that point and that the court will be doing the sentencing. If they convict her of a lesser, then they will be doing the punishment.

One of appellant's attorneys objected and stated, "We think the jury panel should be entitled to know. Since the State is not seeking the death penalty and that it is an automatic punishment assessed by the court at that point in time, we think the jury panel should be entitled to know that it is an automatic life sentence." He further asserted that whether it is defined as life without parole or not, "they should at least be told that the only punishment that the defendant can receive at that point is life, so we would object and make a request that we be allowed to go into that."

The prosecutor argued that, because the automatic life sentence was not a matter for venire members' consideration, there was no need to question them about it, thus "[t]here is no need to explore their thoughts or their feelings about the automatic sentence, just like any other case when the court is doing the sentencing." After commenting about questioning and qualifying prospective jurors to consider the full range of punishment on lesser-included offenses, the prosecutor added, "It's very clear that any type of potential punishment shouldn't enter into their deliberations on guilt or innocence. For that reason, I think the court's decision is the appropriate one."

The trial court stated that it was going to stand by its ruling and that it was going to instruct the jury that the "death penalty is not an option in this case. If you convict her of capital, the court will be doing the sentencing."

Appellant asserts that she was thereby denied her right to question the prospective jurors so

that she might intelligently exercise her peremptory challenges as guaranteed by the Texas and United States constitutions. She acknowledges that trial counsel did not advise the court of a particular question that she wished to propound on that issue, but asserts that his request that he "be allowed to go into that" was sufficient to preserve error, and the trial court's willingness to "stand by" its order confirms this view. Appellant also argues that the error was preserved and is of constitutional dimension: the trial court's ban deprived her of due process of law, effective assistance of counsel, and her "right to be heard." She also suggests that, because the trial court's error is of constitutional dimension, such error should be examined under TEX. R. APP. P. 44.2(a) and urges this Court to determine whether such constitutional error is of "structural" or "systemic" proportions and to assess harm accordingly.

The state notes that appellant's trial attorney did not object to the trial court's actions on constitutional grounds. The state argues that these claims, raised for the first time on appeal, have therefore been waived for purposes of appeal. It also asserts that there is nothing in the language of TEX. PEN. CODE ANN. § 12.31(b) that requires a trial court to permit a trial attorney to question prospective jurors about the fact that a life sentence without the possibility of parole would be assessed if appellant was found guilty of capital murder. It maintains that appellant was therefore not denied her right to ask the prospective jurors a proper question. The state argues that any error on the part of the trial court in failing to comply with § 12.31(b) constituted statutory error and was harmless under TEX. R. APP. P. 44.2(b).

**Analysis**

Appellant asserts that the trial court initiated the error complained of by informing counsel, despite the clear mandate of TEX. PEN. CODE ANN. § 12.31(b), that it would not advise the venire

that appellant would receive an automatic sentence of life without parole if convicted of capital murder and also instructed counsel not to do so during voir dire. Ground one of appellant's petition asserts that appellant's constitutional claims of lack of due process and ineffective assistance of counsel were preserved for appellate review and challenges the court of appeals's determination that her constitutional complaints were not preserved. Appellant acknowledges that "counsel did not specifically object that the trial court's prohibitions violated [her] right to effective counsel and right to ask proper questions to the venire under our state and federal constitutions . . .." (Appellant's Brief, p. 11.) However, she contends that the trial court's "intervention and order explicitly prohibited h[er] from doing so" and asserts that her "grounds for review were apparent from the context of the pre-voir dire exchange between the court and counsel." (Appellant's Brief, p. 11.)

After reviewing the record, we do not find any specific objection at trial claiming a due-process violation resulting from the trial court's actions. The record does reflect that the trial court explicitly announced that it would not inform the prospective jurors pursuant to that provision, despite the mandatory language of the statute.

As a prerequisite for presenting a complaint for appellate review, TEX. R. APP. P. 33.1(a) requires a timely objection with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context. Appellant timely objected to the failure of the trial court to conform to the mandatory language of § 12.31(b). "As it did on direct appeal, the State recognizes that, by its wording, Section 12.31(b) is mandatory rather than discretionary. . . . Thus, the trial court erred by failing to inform the prospective jurors that a guilty verdict on capital murder would result in a mandatory sentence of life imprisonment without parole." (State's Brief, p. 19.)

This is not the common complaint about voir dire–that the defendant wished to investigate a general topic and the trial court refused to allow questioning on that topic. In this case, the statute required the trial court to give to the jury one specific piece of information–that the sentence upon conviction of capital murder would be life without parole–regardless of whether the defense requests it. The trial court refused to give the mandatory instruction, despite an explicit request by the defendant. However, that request and subsequent objection were made only as to the statutory violation. Appellant made no objection based on the constitutional bases she now asserts. We hold that the error was preserved as to the statutory complaints, but not preserved as to the constitutional claims. Because appellant made no objection based upon the constitutional bases she now asserts in ground one, we overrule ground one.

In her second ground for review, appellant urges this Court to assess harm under the constitutional standard set out in Rule 44.2(a). Because we have held that error was not preserved as to appellant's constitutional claims, appellant's claim that the harm from the error should be assessed under Rule 44.2(a)'s provisions for constitutional error is moot. Accordingly, we dismiss ground two.

Appellant's third ground for review contends that the harm caused by the trial court's error should be reviewed under the provisions of Rule 44.2(b) and "in light of [the] stated purpose" of that rule. Pursuant to Rule 44.2(b), we must disregard all non-constitutional errors that do not affect an appellant's substantial rights. *Rich v. State*, 160 S.W.3d 575, 577 (Tex. Crim. App. 2005). "A substantial right is affected 'when the error has a substantial and injurious effect or influence in determining the jury's verdict.'" *Id.*, *quoting Russell v. State*, 155 S.W.3d 176, 179 (Tex. Crim. App. 2005). The court of appeals applied those standards to its harm analysis pursuant to Rule 44.2(b).

*Murphy v. State*, *supra* at \*\* 28-33.

While appellant's third ground for review asserts that harm from the trial court's error should be evaluated under Rule 44.2(b), her argument asserts that the trial court's actions constitute "structural" error that is immune to harm analysis or, alternatively, is "systemic." She maintains that it is impossible to determine with any certainty whether she was harmed by the trial court's error, and because meaningful harm analysis is not possible, it cannot be said with fair assurance that the trial court's error did not affect a substantial right.

In this case, the right protected by § 12.31(b) is the right to have the prospective jurors informed that the state is not seeking the death penalty and that a sentence of life imprisonment without parole is mandatory upon conviction of the capital offense. Although the jury would not be involved in assessing that mandatory sentence, the legislature nevertheless saw fit to require the trial court to provide that information to the prospective jurors. The trial court's error abrogated that statutory right.

Pursuant to the language of Rule 44.2(b), we disregard all non-constitutional error that does not affect appellant's substantial rights. "We have construed this to mean that an error is reversible only when it has a substantial and injurious effect or influence in determining the jury's verdict." *Taylor v. State*, 268 S.W.3d 571, 592 (Tex. Crim. App. 2008), *citing King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). We have also held that the substantial right at issue in voir dire is the ability to empanel only those jurors who are qualified to serve. If an appellant does not present record evidence that demonstrates that the trial court's error deprived her of a jury comprised of legally qualified jurors, she suffered no harm. *Gray v. State*, 233 S.W.3d 295, 301 (Tex. Crim. App. 2007).

Appellant asserts that the omitted instruction was a mandatory part of the trial and that its absence affected how the venire perceived the case and the jury decided it. She also notes that seven members of the venire indicated that they could not be fair and impartial because they were excluded from the consideration of punishment for reasons that were never made known to them. Appellant suggests that, had § 12.31(b) been followed, all members of her venire "would have known the consequences of a guilty verdict and been able to inform the court whether that would affect their ability to be fair and impartial jurors." (Appellant's Brief, p. 16.) She also suggests that this information would have "heightened jurors' sense of what proof beyond a reasonable doubt meant because of the severity of the sentence that followed a finding of guilt." (Appellant's Brief, p. 16.)

The state directs our attention to several general factors, set out in *Rich v. State*, 160 S.W.3d at 577-78, as relevant considerations in determining harm from being barred from asking a proper question of a venire. Those factors were described in a case involving the erroneous admission of evidence and were applied to the erroneous denial of a proper question in voir dire. *Id*. However, in this case, the trial court erred in not providing to the prospective jurors the information mandated by § 12.31(b). Under these circumstances, in which the error does not involve evidentiary or legal issues at trial, the *Rich* factors do not apply to the evaluation of harm.

In the instant case, appellant has failed to show that she was deprived of a jury that was comprised of legally qualified jurors. The failure to provide information to which the jury panel was entitled by statute did not affect the legal qualifications of any of the venire members. We therefore conclude that the trial court's error did not affect appellant's substantial rights, and pursuant to Rule 44.2(b), it must be disregarded. We overrule appellant's third ground for review.

We affirm the judgment of the court of appeals.

Delivered: October 21, 2009
Do not publish