

# IN THE
# TENTH COURT OF APPEALS

### No. 10-15-00152-CR

**ERRIC BERNARD PORTIS, JR.,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 361st District Court**
**Brazos County, Texas**
**Trial Court No. 13-05016-CRF-361**

## MEMORANDUM OPINION

Erric Portis, Jr. was convicted of two counts of aggravated robbery and was sentenced to ninety years in prison on each count. TEX. PENAL CODE ANN. § 29.03 (West 2011). Portis complains that the trial court abused its discretion by allowing the admission of evidence regarding (1) his prior incarceration to prove identity; (2) evidence of a carjacking that took place earlier in the day before the aggravated robbery; (3) evidence of comments made by Portis during the investigation regarding going back to

prison; (4) evidence of a comment Portis yelled at a detective during the investigation; and (5) extraneous offense evidence admitted during the rebuttal portion of the punishment phase of the trial.  Because we find no reversible error, we affirm the judgments of the trial court.

## ADMISSION OF EVIDENCE STANDARD OF REVIEW

Each of Portis's five issues complain that the trial court abused its discretion in the admission of evidence during the trial.[1]  We review the trial court's decision to admit or exclude evidence under an abuse of discretion standard.  *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010).  The trial court does not abuse its discretion unless its decision to admit or exclude the evidence lies outside the zone of reasonable disagreement.  *See Martinez*, 327 S.W.3d at 736; *De La Paz v. State*, 279 S.W.3d 336, 343-44 (Tex. Crim. App. 2009).  If the trial court's ruling on admissibility is correct under any applicable legal theory, we will hold that the trial court did not abuse its discretion even if it gave a wrong or incomplete reason for the ruling.  *See De La Paz*, 279 S.W.3d at 344.

## THE TATTOO

In his first issue, Portis complains that the admission of testimony regarding a conversation that took place between Portis and Donte Jackson regarding tattoos on Portis's hand was erroneous pursuant to Rule 403 of the Rules of Evidence.  Jackson, a

---

[1] Because this is a memorandum opinion and the parties are familiar with the facts, we recite only those facts necessary to the disposition of each issue.  *See* TEX. R. APP. P. 47.1, 47.4.

correctional officer at TDCJ, was a resident of an apartment complex near the bank where the robbery took place. The day of the robbery, Portis approached Jackson from an older white Ford Taurus and asked to use his phone. During this conversation, Jackson asked Portis about a tattoo Jackson saw on Portis's hand because it was of very poor quality and looked like a tattoo inmates commonly get in prison. Portis allegedly told Jackson that he had gotten a "prison tattoo" while he was incarcerated for a "couple of years in the Stiles Unit." After Jackson testified to the substance of their entire discussion regarding the tattoo, Portis then objected "to the couple-of-years comment" pursuant to rules 401, 403, and 404(b) of the Rules of Evidence. The trial court overruled his objection but gave the jury a limiting instruction at Portis's request that the jury could only consider the evidence for purposes of identity. The State argues that Portis's objection was not timely.

An objection is timely if it is made as soon as the ground for the objection becomes apparent, i.e., as soon as the defense knows or should know that an error has occurred. TEX. R. APP. P. 33.1(a)(1); *Neal v. State*, 256 S.W.3d 264, 279 (Tex. Crim. App. 2008). Generally, this occurs when the evidence is admitted. *Dinkins v. State*, 894 S.W.2d 330, 355 (Tex. Crim. App. 1995). If a party fails to object until after an objectionable question has been asked and answered, and he can show no legitimate reason to justify the delay, his objection is untimely and error is waived. *Id*.

In this instance, Portis had answered several questions about the poor quality of his tattoo being because it was done in prison and he asked Jackson if he was a

correctional officer. The State asked Jackson if Portis had told him where he was locked up and Jackson responded that yes, he did. The State then asked what he said and Jackson then responded that Portis had done "a couple of years down at the Stiles Unit." The State then said, "Okay" and then Portis made his objection. This was not timely and therefore, error has not been preserved regarding this complaint. We overrule issue one.

## THE CARJACKING

In his second issue, Portis complains that the trial court abused its discretion in allowing the victim of the carjacking to testify regarding the details of how and where the white Ford Taurus that was used as a getaway vehicle in the robbery was stolen from him. Portis objected to this testimony pursuant to Rules 404(b) and 403. However, later in the trial, one of Portis's accomplices testified to the same details as the victim in the carjacking without objection.

It is well-established "erroneously admitted evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling." *Coble v. State*, 330 S.W.3d 253, 282 (Tex. Crim. App. 2010); *see also Estrada v. State*, 313 S.W.3d 274, 302 n.29 (Tex. Crim. App. 2010). Because of the testimony of the accomplice without objection, if there was any error in the admission of the victim's testimony, it was harmless. *Coble*, 330 S.W.3d at 282; *Estrada*, 313 S.W.3d at 302 n.29. We overrule issue two.

**WILL NOT GO BACK TO PRISON**

In his third issue, Portis complains that the trial court abused its discretion by allowing a detective to testify that Portis had told him that "he would die in his tracks before he went back to prison." This statement was made several weeks after the robbery. The investigation had shown that the number that Portis had called from Jackson's cell phone was connected to Portis's girlfriend. Three detectives went to Portis's girlfriend's residence and one detective spoke with Portis outside of the residence while the other two spoke with the girlfriend inside. The detective asked Portis about the details of the robbery. Portis denied driving a white Ford Taurus or having been to the apartment complex where Jackson let Portis use his cell phone. Portis was uncooperative with the detective and told him to arrest him if he was going to do so but that Portis would not answer any more questions. The statement at issue was made at some point during that conversation. Portis objected pursuant to rules 401, 403, 404(b), and 609 of the Rules of Evidence.

Even if we assume without deciding that the admission of this statement was erroneous, we do not find that Portis was harmed by its admission. The purported erroneous admission of evidence is non-constitutional error and is subject to a harm analysis under Texas Rule of Appellate Procedure 44.2(b). *See Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). Under Rule 44.2(b), we disregard all non-constitutional errors that do not affect Portis's substantial rights. *See* TEX. R. APP. P. 44.2(b); *see also Rich*

*v. State*, 160 S.W.3d 575, 577 (Tex. Crim. App. 2005). A substantial right is affected when the error has a substantial and injurious effect or influence in determining the jury's verdict. *Rich*, 160 S.W.3d at 577; *see Johnson v. State*, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001). In conducting the harm analysis, we consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case, the jury instructions, the State's theory and any defensive theories, closing arguments, voir dire, and whether the State emphasized the error. *Rich*, 160 S.W.3d at 577.

Our review of the record shows that there was other evidence of Portis's having been to prison previously, specifically Portis's conversation with Jackson regarding his prison tattoos. Portis had been identified by Jackson by describing his clothing and shoes that matched what one of the robbers had worn in the robbery, by his tattoos, and by his hair that was cut in a Mohawk. Cell phone records connected Portis with his girlfriend and the accomplices in the crime at relevant times and locations. One of the accomplices testified that Portis participated in the robbery with him. The trial court properly instructed the jury regarding the limited purpose of the admission of the extraneous offenses and bad acts. The State did reference the statement briefly in closing. We do not believe that the statement that Portis would "die in his tracks before going back to prison" had a substantial and injurious effect or influence in determining the jury's verdict. We

overrule issue three.

## NAME-CALLING

In his fourth issue, Portis complains that the trial court abused its discretion by allowing the detective that questioned Portis to testify as to a comment yelled by Portis to the detective the same day as the statement in issue three. After Portis terminated the interview with the detective, he eventually left in a vehicle. The detective then observed that a couple of vehicles, including the one in which Portis had left, circled very slowly several times around the mobile home park where Portis's girlfriend resided. Eventually, Portis rolled down the window of one of the vehicles and yelled "Fuck you, pig" to the detective. Portis objected pursuant to rules 401 and 403 of the Rules of Evidence.

Even if we assume without deciding that the admission of this statement was erroneous, we do not find that Portis was harmed by its admission. Under Rule 44.2(b), we disregard all non-constitutional errors that do not affect Portis's substantial rights. *See* TEX. R. APP. P. 44.2(b); *see also Rich v. State*, 160 S.W.3d 575, 577 (Tex. Crim. App. 2005). In making this determination, our analysis is the same as discussed above in Portis's third issue with the exception that the State did not reference this statement in its closing argument. We do not find that this statement had a substantial and injurious effect or influence in determining the jury's verdict. We overrule issue four.

## PUNISHMENT REBUTTAL STATEMENT

In his fifth issue, Portis complains that the trial court erred by allowing the State

to present testimony regarding a statement Portis made to a sheriff's deputy who had moved Portis to a holding cell for Portis to be taken to court early in the morning on the day of the sentencing phase of the trial. This was prior to the State resting its case in punishment. The deputy testified that Portis told him that "after he got sentenced he was going to act a fool and we were going to have to tase him." Portis argues that this evidence was not proper rebuttal evidence because it was available to the State prior to resting and did not rebut a material fact presented in Portis's case during the punishment phase. The State argued that while it did know of the evidence prior to resting its case-in-chief on punishment, the State had been unable to contact the deputy to whom Portis made the comment to get him to testify earlier because he had gotten off duty at 7:00 that morning.

Portis presented two witnesses in the punishment phase, a friend and his mother. Both testified that Portis was at times a good person and a good father to his then 10-year-old daughter. Portis's mother testified extensively about Portis's difficult childhood and criminal history throughout his life.

Even if we assume without deciding that the testimony was erroneously admitted as rebuttal evidence, we do not find that Portis was harmed by the admission of the evidence. As described above in issues three and four, the erroneous admission of evidence is generally non-constitutional error governed by Rule 44.2(b). TEX. R. APP. P. 44.2(b). Therefore, we "need only determine whether or not the error affected a substantial right of the defendant." *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App.

2000). Substantial rights are not affected if, based on the record as a whole, we have a fair assurance that the error did not influence the jury or had but a slight effect. *Motilla*, 78 S.W.3d at 355. The record shows that Portis was found guilty of aggravated robbery based on evidence that a semi-automatic pistol was pointed at a bank teller while another teller put money into a bag during the aggravated robbery, and during the punishment phase the evidence also showed that Portis was believed to have committed a second aggravated robbery at a bank in a similar fashion two weeks after the robbery that was the subject of this prosecution. The evidence also showed that Portis had an extensive violent criminal history that started when Portis was a juvenile and included several incarcerations. While Portis was in jail awaiting trial on these offenses, Portis had been inciting riots, swearing at and threatening guards, and otherwise causing problems on many occasions. Based on his tattoos, evidence was presented that it was likely that Portis is a member of a gang. After reviewing the record as a whole, we conclude the error in the allowance of the testimony regarding Portis's threats to act out at sentencing in rebuttal, if any, did not influence the jury or had but a slight effect. *See Motilla*, 78 S.W.3d at 355. We overrule issue five.

## CONCLUSION

Having found no reversible error, we affirm the judgments of the trial court.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed December 28, 2016
Do not publish
[CRPM]

