

# IN THE
# TENTH COURT OF APPEALS

### No. 10-15-00077-CR

**WILLIAM RAY PHILLIPS,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

### From the 19th District Court
### McLennan County, Texas
### Trial Court No. 2014-993-C1

## MEMORANDUM  OPINION

In two issues, appellant, William Ray Phillips, challenges his conviction for

solicitation to commit capital murder.  *See* TEX. PENAL CODE ANN. § 15.01 (West 2011); *see*

*also id.* § 19.03 (West Supp. 2015).  Specifically, appellant contends that the trial court erred

in:  (1) admitting evidence of extraneous offenses; and (2) expanding the theory of

admissibility of the extraneous offenses in the jury charge.  We affirm.[1]

---

[1] As this is a memorandum opinion and the parties are familiar with the facts, we recite only those facts necessary to the disposition of the case.  *See* TEX. R. APP. P. 47.1, 47.4.

## I. BACKGROUND

Here, appellant was charged by indictment with the offense of solicitation to commit capital murder. *See id.* §§ 15.01, 19.03. The record reflects that appellant sought to have Judge Matt Johnson of the 54th Judicial District Court killed due to appellant's anger with Judge Johnson's handling of appellant's prior cases in his court. The State later filed a notice of extraneous offenses, alleging appellant's prior felony convictions for possession of child pornography and failure to register as a sex offender.

At the conclusion of the trial, the jury found appellant guilty of the charged offense. And despite appellant's pleas of "not true" as to the enhancement paragraphs, the jury found the paragraphs to be true and sentenced appellant to eighty years' incarceration in the Institutional Division of the Texas Department of Criminal Justice. The trial court certified appellant's right of appeal, and this appeal followed.

## II. EXTRANEOUS OFFENSES

In his first issue, appellant complains that the trial court erred in admitting evidence, through the guise of motive, of appellant's plans to have United States District Judge Walter S. Smith Jr. and McLennan County District Attorney Abel Reyna killed also.

"A timely and specific objection is required to preserve error for appeal." *Luna v. State*, 268 S.W.3d 594, 604 (Tex. Crim. App. 2008); *see* TEX. R. APP. P. 33.1(a)(1)(A). "An objection is timely if it is made as soon as the ground for the objection becomes apparent, i.e., as soon as the defense knows or should know that an error has occurred." *Grant v.*

*State*, 345 S.W.3d 509, 512 (Tex. App.—Waco 2011, pet. ref'd) (citing *Neal v. State*, 256 S.W.3d 264, 279 (Tex. Crim. App. 2008)). "If a party fails to object until after an objectionable question has been asked and answered, and he can show no legitimate reason to justify the delay, his objection is untimely and error is waived." *Id.* (citing *Dinkins v. State*, 894 S.W.2d 330, 355 (Tex. Crim. App. 1995) (en banc)). There are, however, the following two exceptions to the proposition of law that a party must object each time he thinks inadmissible evidence is being offered: (1) when the party has secured a running objection on the issue he deems objectionable; or (2) when the defense lodges a valid objection to all the testimony he deems objectionable on a given subject outside of the presence of the jury. *Ethington v. State*, 819 S.W.2d 854, 858-59 (Tex. Crim. App. 1991). Furthermore, "'[a]n error [if any] in the admission of evidence is cured when the same evidence comes in elsewhere without objection.'" *Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004) (quoting *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998)); *see Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003) ("In addition, a party must object each time the inadmissible evidence is offered or obtain a running objection.").

At trial, appellant sought to prevent the introduction of evidence that in addition to Judge Johnson, appellant also sought to have Judge Smith and District Attorney Reyna killed. In doing so, appellant objected to this extraneous-offense evidence during the testimony of several witnesses. When the objection was denied, appellant sought a

running objection to this evidence, which the trial court granted but only as to the specific witness's testimony during which the objection was made. This is important because the complained-of extraneous-offense evidence was offered later at trial without objection.

Specifically, during the testimony of Special Agent Jimmy Brigance, a group supervisor for the Bureau of Alcohol, Tobacco, Firearms, and Explosives, the State offered State's Exhibit 8—a recorded encounter between Brigance and appellant that took place inside the jail. In this encounter, Brigance, who was acting as a hired hitman for appellant, mentioned that he knew of appellant's desire to "get rid of" three people, including "something about a federal judge." Brigance also recounted these statements in his testimony. Appellant did not object to any of this testimony, nor did he request a running objection to Brigance's testimony or State's Exhibit 8. Therefore, because the same complained-of evidence came in elsewhere during trial without objection, any error in the admission of the complained-of evidence was cured.[2] *See Lane*, 151 S.W.3d at 193; *Valle*, 109 S.W.3d at 509; *Leday*, 983 S.W.3d at 718.

And even if it was error to admit the complained-of evidence and appellant had objected each time it was offered, we cannot say that the testimony affected appellant's substantial rights. The purported erroneous admission of evidence is non-constitutional

---

[2] We recognize that appellant requested in his pre-trial motion in limine a prohibition of all references to the proposed killing of Judge Smith and District Attorney Reyna during trial. The trial court denied appellant's request. In any event, the Court of Criminal Appeals has stated that "[a] trial judge's grant or denial of a motion *in limine* is a preliminary ruling only and normally preserves nothing for appellate review." *Geuder v. State*, 115 S.W.3d 11, 14-15 (Tex. Crim. App. 2003) (emphasis in original).

error and is subject to a harm analysis under Texas Rule of Appellate Procedure 44.2(b). *See Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). Under Rule 44.2(b), we disregard all non-constitutional errors that do not affect appellant's substantial rights. *See* TEX. R. APP. P. 44.2(b); *see also Rich v. State*, 160 S.W.3d 575, 577 (Tex. Crim. App. 2005). A substantial right is affected when the error has a substantial and injurious effect or influence in determining the jury's verdict. *Rich*, 160 S.W.3d at 577; *see Johnson v. State*, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001). In conducting the harm analysis, we consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case, the jury instructions, the State's theory and any defensive theories, closing arguments, voir dire, and whether the State emphasized the error. *Rich*, 160 S.W.3d at 577.

Each time a witness mentioned the extraneous conduct, the trial court instructed the jury to consider the evidence only for purposes of establishing appellant's motive or intent and not for character conformity. And though the State referenced Judge Smith and District Attorney Reyna during its opening statement, Judge Johnson was the only potential victim discussed during closing argument. Additionally, each witness testified that they learned of appellant's desire to have Judge Smith and District Attorney Reyna

killed through conversations with Aaron Collier, a "jailhouse snitch" with a long criminal history and minimal credibility.

Moreover, we believe that the extraneous-offense evidence had little effect on the jury's verdict given the overwhelming evidence of appellant's guilt with respect to the charged offense. The record contains numerous letters written by appellant to a faux corporation—the Jay Smith Corporation—set up for the purpose of allowing appellant to hire a hitman to kill Judge Johnson. Appellant's letter contained profane tirades directed against Judge Johnson's character and requested that the Jay Smith Corporation "help" in taking care of appellant's "legal" matters, despite repeated clarifications that the corporation did not operate in any legal capacity.[3] And finally, appellant was recorded on video agreeing to pay $30,000 to the corporation in exchange for the assassination of Judge Johnson.

Based on the foregoing, we cannot say that the purported error in admitting the extraneous-offense evidence had more than a slight effect on the jury's verdict; accordingly, any error in the admission of the complained-of evidence was harmless. *See* TEX. R. APP. P. 44.2(b); *Rich*, 160 S.W.3d at 577; *Motilla*, 78 S.W.3d at 353 ("An appellate

---

[3] In his December 28, 2013 letter to the corporation, appellant referenced his "wrongful convictions" and had drawings of a bomb and the crosshairs of a rifle. Brigance testified that appellant expressed to him that he wanted Judge Johnson killed by gunshot or using a bomb. And in other letters written to Karl Fedro and others, appellant stated that his "wrongful convictions" came from Judge Johnson's court.

court can and should consider overwhelming evidence of guilt in a harm analysis."); *Johnson*, 43 S.W.3d at 4. We overrule appellant's first issue.

## III.    THE JURY CHARGE

In his second issue, appellant asserts that the trial court improperly expanded the theory of admissibility of the aforementioned extraneous-offense evidence in the jury charge. Appellant argues that the trial court initially limited the use of the extraneous-offense evidence to motive; however, the trial court later allowed the insertion of "preparation, plan or absence of mistake or accident of the defendant" in the jury charge as additional reasons for use of this evidence by the jury.

### A.    Applicable Law

A claim of jury-charge error is reviewed using the procedure set forth in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). *See Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009); *see also Haley v. State*, No. 10-13-00264-CR, 2014 Tex. App. LEXIS, at *2 (Tex. App.—Waco July 3, 2014, pet. ref'd) (mem. op., not designated for publication). If error is found, we then analyze that error for harm. *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003).

If an error was properly preserved by objection, reversal will be necessary if there is some harm to the accused from the error. *Almanza*, 686 S.W.2d at 171. Conversely, if error was not preserved at trial by a proper objection, a reversal will be granted only if the jury-charge error causes egregious harm, meaning appellant did not receive a fair and

impartial trial. *Id.* For both preserved and unpreserved jury-charge error, the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including contested issues and weight of probative evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole. *See Patrick v. State,* 906 S.W.2d 481, 492 (Tex. Crim. App. 1995); *Arline v. State*, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986); *Riggs v. State*, 482 S.W.3d 270, 273-74 (Tex. App.—Waco 2015, no pet.). To obtain reversal for charge error, appellant must have suffered actual harm, not merely theoretical harm. *Sanchez v. State*, 376 S.W.3d 767, 775 (Tex. Crim. App. 2012); *Arline*, 721 S.W.2d at 352.

## B.     Discussion

Appellant timely objected to the jury charge during trial, and his objection on appeal comports with that made in the trial court. Accordingly, we must determine if the jury charge is erroneous and if appellant suffered some harm from the purported error. *See Almanza*, 686 S.W.2d at 171.

Assuming without deciding that the trial court improperly expanded the theory of admissibility of the extraneous-offense evidence in the jury charge, for a number of reasons, we are convinced that any such error did not "injure the rights of the defendant." *See Barrios*, 283 S.W.3d at 350. Specifically, the evidence of appellant's guilt is overwhelming. As mentioned above, appellant was recorded on video offering $30,000 to have Judge Johnson killed. The record contained numerous letters from appellant and

testimony from witnesses that established appellant's guilt. Moreover, the trial court repeatedly provided oral instructions to the jury at the time the evidence was presented that they should only consider the complained-of extraneous-offense evidence for the purposes of determining appellant's motive and intent. *See Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009) (stating that juries are generally presumed to have followed the court's instructions); *see also Breckenridge v. State*, 40 S.W.3d 118, 126-27 (Tex. App.—San Antonio 2000, pet. ref'd) (concluding that appellant did not suffer "some harm" by the trial court's purported instructions that allowed the jury to consider extraneous misconduct for purposes other than proving intent because the trial court verbally instructed the jury regarding each of the extraneous events that they were so limited in their considerations).

Furthermore, the State did not mention the extraneous-offense evidence during closing argument. *See Lindsay v. State*, 102 S.W.3d 223, 229 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (concluding that error in admission of evidence was harmless where the State did not emphasize the evidence during closing argument). We therefore cannot say that the purported error in the charge caused appellant some harm under *Almanza*.[4] *See Barrios*, 283 S.W.3d at 350; *Almanza*, 686 S.W.2d at 171; *see also Williams v.*

---

[4] We also note that appellant's expression of his desire to have Judge Smith and District Attorney Reyna killed arguably constituted inchoate thoughts that are not expressly excludable under Texas Rule of Evidence 404(b). *See Moreno v. State*, 858 S.W.2d 453, 463 (Tex. Crim. App. 1993) ("Appellant's assertion that this evidence was somehow evidence of other crimes, wrongs, or acts . . . is mistaken. To constitute an extraneous offense, the evidence must show a crime or bad act, and that the defendant was connected to it. This necessarily includes some sort of extraneous conduct on behalf of the defendant which forms part of

*State*, 14-10-00448-CR, 2011 Tex. App. LEXIS 3312, at **5-9 (Tex. App.—Houston [14th Dist.] May 3, 2011, pet. ref'd) (mem. op., not designated for publication) (concluding that appellant did not suffer some harm by the trial court's failure to include an extraneous-offense limiting instruction in the charge when the record contained overwhelming evidence of guilt; the trial court provided limiting instructions when the evidence was introduced; and the prosecutor did not emphasize the extraneous offenses during closing argument).  We overrule appellant's second issue.

## IV.    CONCLUSION

Having overruled both of appellant's issues, we affirm the judgment of the trial court.


AL SCOGGINS
Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Affirmed
Opinion delivered and filed August 17, 2016
Do not publish
[CRPM]

---

the alleged extraneous offense.  Here, the statements concerning appellant's thoughts of kidnapping and killing Cisneros were just that, inchoate thoughts.  There is no conduct involved which alone or in combination with these thoughts could constitute a bad act or wrong, much less a crime.  Absent this, appellant's statements concerning his desire to kidnap and kill Cisneros did not establish prior misconduct and thus were not expressly excludable under Rule 404(b) . . . ." (internal citations omitted)).  Unlike the situation with Judge Johnson, the record contains no evidence that appellant took steps to commission the killing of Judge Smith or District Attorney Reyna.

