**Modify; and Affirmed as modified; Opinion Filed February 26, 2020**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-18-01138-CR**

**No. 05-18-01176-CR**

**No. 05-18-01177-CR**

**No. 05-18-01178-CR**

**No. 05-18-01179-CR**

**No. 05-18-01180-CR**

**JOSE ANTONIO JUAREZ, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

On Appeal from the 282nd Judicial District Court
Dallas County, Texas
**Trial Court Cause Nos. F-1772146-S, F-1035577-S, F-134001-S, F-1433730-S, F-1433734-S,**
**F-1433735-S**

## MEMORANDUM OPINION

Before Justices Myers, Osborne, and Nowell
Opinion by Justice Nowell

The State charged Jose Antonio Juarez with five controlled-substance-related offenses.

Appellant judicially confessed to the offenses and the trial court placed him on community

supervision. A few years later, the State filed a motion to revoke appellant's community

supervision in each of the five cases, alleging violations of the conditions of community

supervision. One of those conditions was commission of a new offense, assault involving family

violence. After the State withdrew a different allegation (alleging appellant violated the terms of

his community supervision by operating a motor vehicle while intoxicated), appellant pleaded true

to each remaining allegation in the State's motion to revoke except for the assault allegation. The trial court entered judgment revoking appellant's community supervision in each of the five controlled-substance cases and assessed terms of incarceration. As to the assault involving family violence charge, appellant pleaded not guilty, but a jury found him guilty and the trial court assessed punishment at seven years' incarceration.

In seven issues on appeal, appellant requests numerous modifications to the trial court's judgments. He also argues the trial court erred by failing to rule on an objection to testimony and erred by interpreting his request for the State to elect a manner and means as a motion for directed verdict. We modify each of the trial court's judgments and affirm as modified.

FACTUAL BACKGROUND

Emily Young, the complaining witness, dated appellant for several years and regularly stayed at his apartment. On September 8, 2017, Young and appellant were in the car and began arguing and yelling at each other. Young stopped the car, but the couple continued arguing and appellant broke the car key in the ignition. Young then attempted to exit the vehicle, but appellant grabbed her arm and "pulled [her] back in." Young testified appellant wanted her to stop yelling so he "just put his thumb in the back of my throat," which was painful and caused her throat to bleed.

Young resumed driving and they continued fighting. She attempted to pull over a second time, but, she testified, "[h]e didn't want me to, so we were just fighting over the steering wheel pretty much." Appellant put his hands on the steering wheel and pressed the gas peddle even though Young was driving. Eventually, Young stopped the car a second time. Appellant still wanted her to stop yelling so he "just put his hands around my neck" and squeezed for about five seconds. She testified he used both hands and said to her "don't make me do that to you." She testified she had "a little" trouble breathing. Afterward her voice was raspy, she had trouble

talking, and it was painful to swallow. Young spit up some blood. After leaving appellant at his apartment, Young drove to her friend's house. Although her friend encouraged Young to go to the hospital, Young spent the night drinking alcohol and went to the emergency room the following day.

Young's mother took pictures of bruises on Young's arms and marks on her neck; the photographs were shown to the jury. Young's mother described the bruises as large and "[b]lack. They were just - - just horrible." She testified appellant also punctured the back of Young's throat with his thumb nail. The jury saw a picture of the inside of Young's mouth, which appeared bloody and swollen. Young's mother testified that Young struggled to swallow or eat and was on a liquid diet for several days.

Officer Joshua Sims of the Dallas Police Department responded to a call for domestic violence assault at a hospital. Young told Sims she and her boyfriend of several years, appellant, were in a car parked in a parking lot. They began driving and, when she attempted to exit the car, appellant grabbed her arms and placed both of his hands on her neck and squeezed. Sims saw bruises on her arms and neck; he testified she had "[a] line of brown bruising across her neck." Young had a raspy voice and neck pain. She also told Sims that appellant stepped on her right foot, which bruised her foot. The jury saw photographs Sims took of Young at the hospital. The photographs show marks around her neck and large bruises on her arms and foot.

Emily Sanchez, the nurse who treated Young, testified that Young arrived in the emergency room at 8:00 a.m. or 9:00 a.m. on September 9, 2017. Sanchez saw bruising around Emily's neck and arms. After conducting an exam, Sanchez determined Young's uvula was swollen and appeared to have been "pushed into her upper palate." Notes from the treating physician indicate Young said her boyfriend push his thumb into the back of her throat and her throat was bleeding

–3–

for hours.  Young told Sanchez she was assaulted the night before and her pain was a "ten out of ten."

Young briefly broke up with appellant after the assault and told her mother she would never see appellant again because she was afraid he would kill her.  Young and appellant reunited in October 2017, but Young hid the relationship from her mother.  After appellant and Young started dating again, Young contacted the detective assigned to her case and asked her not to prosecute; on March 2, 2018, Young executed an affidavit of non-prosecution.  Young's affidavit includes the following statements: (1) " . . . I started hitting him.  He was really patient and tried to restrain me and calm me down"; (2) "He had to put his hands around my neck (not choking) but just to get me to stop yelling and because of the choker necklace I was wearing it left a mark"; (3) I have been back together with him since the incident and I have <u>no</u> fear"; (4) "He is a loving man and he doesn't deserve this"; (5) "This has <u>never</u> happened before or after that night"; and (6) "I had a big role in this."  At trial, Young conceded some statements in her affidavit were not true.  However, she maintained throughout her testimony that any marks left on her neck were because she was wearing an elastic plastic choker necklace.  Shortly before trial, Young broke up with appellant; he told her "I'll find you when I get out."

LAW & ANALYSIS

## A. Objection to Testimony

In his fourth issue, appellant asserts the trial court erred by refusing to rule on his second objection to a question from the State during Young's mother's testimony.  The following exchange occurred while the State examined Young's mother:

> Q.     A couple of weeks ago, um, was Emily hospitalized?
> A.     Yes.
> Q.     And what for?
> MR. GARCIA:[1]  Objection, Your Honor.  This is relevant (as spoken).

---

[1] Mr. Garcia represented appellant at trial; Ms. Wev represented the State.

–4–

THE COURT: State, your response?
You said it's irrelevant?
MR. GARCIA: Uh, yes, Your Honor. It's not relevant testimony.
THE COURT: State?
MS. WEV: Your Honor . . . this goes again to the, uh, complainant's state of mind. Uh, the veracity of her statements and also her behavior here in the courtroom.
Um, the defense counsel asked, uh, you got issues with memory. You got into alcohol use. I'm also eliciting this for the effect on the listener of the defendant's statements when she tried to break up with him.
THE COURT: Overruled.
MR. GARCIA: Your Honor, I would also like to object even though it may be relevant that if the, uh, probative is outweighed by the (unintelligible) unfair prejudice.
THE COURT: Well, you-all don't get to go back and forth with objections. You need to stand, state your objection, and have a seat, okay?
So I've made my ruling.
MR. GARCIA: Your Honor - -
THE COURT: Please answer the question.
MR. GARCIA: Can I object to the Court's lack of making a ruling on my second objection, Your Honor?
THE COURT: You can object to it.
MR. GARCIA: Yes, Your Honor.
THE COURT: And like I said, it's overruled because you didn't raise the issue the first time, Counsel.
You-all will not continue to stand up and go back and forth on objections. You-all are not giving legal objections. You are stating narratives. Legal objections only, take a seat.
You will not go back and forth. You also will not stand back up and give another objection after you didn't state it for that reason. Sit down.

Young's mother proceeded to testify that after Young met with appellant's attorneys and they showed a video from Officer Sim's body camera to her, Young "came home and basically had a mental breakdown and had to be hospitalized."

On appeal, appellant argues "it was error for the trial court to overrule his 403 objection based on timeliness as opposed to the merits of the objection itself." Appellant's argument is limited to the trial court's refusal to consider and rule on his second objection; he does not argue the merits of a rule 403 objection. Appellant also does not argue he was harmed by the trial court's refusal to rule on his second objection. Appellant notes that Texas Rule of Evidence 611 allows a

trial court to exercise "reasonable control over the mode and order of examining witnesses and presenting evidence." *See* TEX. R. EVID. 611.

If we were to assume the trial judge abused her discretion by requiring the attorneys to provide all of their objections to evidence at one time rather than, as she stated "go[ing] back and forth on objections," we would conclude the trial court's failure to rule on appellant's second objection did not harm appellant. Under rule 44.2(b), any error that does not affect a substantial right must be disregarded. TEX. R. APP. P. 44.2(b). A substantial right is affected when "the error has a substantial and injurious effect or influence in determining the jury's verdict." *Rich v. State*, 160 S.W.3d 575, 577 (Tex. Crim. App. 2005). Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001). When conducting a harm analysis, we consider the whole record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case, the jury instructions, the State's theory and any defensive theories, closing arguments, voir dire, and whether the State emphasized the error. *Easley*, 424 S.W.3d at 542; *Rich*, 160 S.W.3d at 577.

The record includes testimony from Young who described the assault, the nurse and doctor who examined her in the emergency room, the police officer who saw her in the emergency room, her mother who saw her the day after the assault, and her best friend who encouraged her to go to the emergency room the night of the assault. Young testified about the timeline of events and the other witnesses testified about the bruising on her arms and marks on her neck that they saw afterward. The jury saw photographs taken the day afterward by Sims and Young's mother. Although the State mentioned the objected-to testimony in its closing argument, it was as part of the State's theory that Young, as a victim of domestic violence, had not been forthcoming about

–6–

how appellant injured her because she continued to try to protect him. The trial court's refusal to rule on the objection did not relate to the nature of the evidence supporting the verdict, the jury instructions, the State's theory and any defensive theories, closing arguments, or voir dire. The State did not emphasize the alleged error and we doubt the jury would consider the alleged error in connection with the evidence. Considering all of the factors in a harm analysis, we conclude the trial court's failure to rule on appellant's objection lodged to Young's mother's testimony was non-constitutional and did not have a substantial and injurious effect or influence in determining the jury's verdict. *See Rich*, 160 S.W.3d at 577. We overrule appellant's fourth issue.

## B. Election of Manner and Means

In his fifth issue, appellant argues the trial court erred by interpreting appellant's request for the State to elect a manner and means as a motion for directed verdict. After the State rested and outside the presence of the jury, appellant's counsel moved for a directed verdict based on the State's failure to present sufficient evidence to prove the offense occurred in Dallas County or to prove appellant impeded Young's airway or circulation. After the State presented its argument in response, appellant's counsel replied: "I have no counter to that, Your Honor." The trial court denied the motion for directed verdict. Appellant does not appeal this ruling.

The charge conference followed. Appellant's counsel objected to the proposed charge, arguing the following to the trial court while reading from the proposed charge:

> Um, "By grabbing the complainant's neck with the hand or hands."
> And then later on it goes on to say "By forcing the thumb against the complainant's neck."
> It's, uh, the defense's contention that those are duplicative. Forcing the thumb against the neck goes hand in hand with squeezing the neck with their hand or hands. I believe that the thumb is part of the hand, and the neck is the same as the neck.
> So squeezing the neck and forcing the thumb against the neck are unnecessarily duplicative. And, uh, I believe that it just doesn't make sense to have the thumb against the neck.
> I believe what the State intended to do was by forcing the thumb against the complainant's uvula. But that has not been charged, and therefore I would request

–7–

that that particular clause, or by forcing the thumb against complainant's neck, be stricken from the charge.

The State argued the proposed language tracked the indictment and appellant's counsel's argument was "a backdoor motion to quash the indictment." The trial court compared the indictment to the proposed application paragraph and then stated: "Defense counsel's request is denied based on the Court's review of the State's indictment."

Appellant's counsel then stated: "Um, just in the alternative, uh, I'll argue that the State has not offered a scintilla of evidence that the thumb was used to injure the complainant's neck other than that in general his hands were around her neck." The State responded that appellant was functionally making another motion for directed verdict. The trial court stated: "So Counsel's second motion for directed verdict is denied."

Appellant's fifth issue states "the trial court erred in interpreting Appellant's request for the State to elect a manner and means as a motion for directed verdict. (RR8:101)." Page 101 of volume 8 of the reporter's record includes the argument by appellant's counsel that "squeezing the neck and forcing the thumb against the neck are unnecessarily duplicative." The trial court denied appellant's counsel's request. Appellee then made its alternative argument that the State failed to offer a scintilla of evidence "that the thumb was used to injure the complainant's neck other than that in general his hands were around her neck," and that request appears later in the record. The trial court treated this alternative argument as a motion for directed verdict, which it denied. The record shows the trial court separately addressed the two objections and did not treat his first objection, the one he argues on appeal, as a motion for directed verdict. On appeal, appellant merges his two objections at trial into one. Appellant does not argue the trial court erred by failing to require the State to elect a manner and means, the jury charge was improper, or the jury charge permitted the jury to convict based on a non-unanimous verdict. Appellant only argues "[t]he trial court's consideration of the request as a motion for directed verdict was in error." However, the

–8–

trial court did not consider his request as a motion for directed verdict. The trial court considered the requests separately. We conclude appellant's fifth issue presents nothing for our review.

## C. Modification of Judgments

In his first, second, sixth, and seventh issues, appellant argues this Court should modify the judgments: (1) to accurately reflect the trial court's order to waive court costs; (2) alternatively, to delete duplicative costs in those cause numbers; (3) to show the State abandoned its allegation that appellant violated a term and condition of his community supervision by operating a motor vehicle while intoxicated; and (4) to reflect appellant pleaded "not true" to the allegation he committed the new offense of assault. Appellate courts may modify a trial court's judgment and affirm it as modified. See TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993). This Court "has the power to correct and reform the judgment of the court below to make the record speak the truth when it has the necessary data and information to do so." *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, writ ref'd). Appellate courts may reform trial court judgments where "the evidence necessary to correct the judgment appears in the record." *Id*. If a clerical error in the trial court's judgment is brought to our attention, we have a "mandatory duty" to correct it. *Id*.

After this appeal was submitted, we abated the appeal and ordered the trial court to file supplemental clerk's records containing corrected judgments. Although the trial court failed to do so, the trial court did file findings of fact, which state:

1) This Court has determined that the judgments in Cause Numbers F10-35577-S, F14-33730-S, F14-33735-S, and F17-72146-S incorrectly reflect that court costs were assessed.
2) This Court has determined that the judgments in Cause Numbers F13-34001-S and F14-33734-S are correct in not assessing court costs, however, the "Criminal Court Fee Docket" included in the Clerk's Record for those cases incorrectly reflect that court costs were assessed.
3) This Court has determined that the judgments in Cause Numbers F10-35577-S, F13-34001-S, F14-33730-S, F14-33734-S, and F14-33735-S incorrectly reflect that the defendant pled true to all allegations in the State's motion to revoke or

adjudicate. The judgments should reflect that the defendant entered a plea of true to violating conditions J, L, N, P, and S.

Because we have the necessary information to do so, we modify the trial courts judgments in trial court Cause Numbers F10-35577-S, F14-33730-S, F14-33735-S, and F17-72146-S to remove the assessments of court costs. We modify the judgments in trial court Cause Numbers F10-35577-S, F13-34001-S, F14-33730-S, F14-33734-S, and F14-33735-S to show the State abandoned the allegation in its first paragraph in the motion to revoke, paragraph A,[2] that alleged appellant operated a motor vehicle while intoxicated and to show the trial court found the allegations in paragraphs A (assault), J, L, N, P, and S were "true." We sustain appellant's first, sixth, and seventh issues. Because we resolve appellant's first issue in his favor, we need not address his second issue asserting the court costs are duplicative or his third issue arguing the $25 time payment fee is unconstitutional. *See* TEX. R. APP. P. 47.1.

CONCLUSION

We modify the trial court's judgments and affirm as modified.

/Erin A. Nowell/
ERIN A. NOWELL
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
181138F.U05

---

[2] The State's motions to revoke include two paragraphs labeled "A." The first alleges appellant violated condition (A) by operating a motor vehicle in a public place while intoxicated. The State abandoned this allegation. The second alleges appellant "committed the offense of Assault Family/House Member Impede Breath/Circulation." The jury found appellant guilty of this offense.

–10–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JOSE ANTONIO JUAREZ, Appellant

No. 05-18-01138-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 282nd Judicial District Court, Dallas County, Texas
Trial Court Cause No. F-1772146-S.
Opinion delivered by Justice Nowell.
Justices Myers and Osborne participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

We **DELETE** the Court Costs of $299.00.  Court Costs are $0.00.

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 26th day of February, 2020.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JOSE ANTONIO JUAREZ, Appellant

No. 05-18-01176-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 282nd Judicial District Court, Dallas County, Texas
Trial Court Cause No. F-1035577-S.
Opinion delivered by Justice Nowell.
Justices Myers and Osborne participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

We **DELETE** the Court Costs of $459.00. Court Costs are $0.00.

We **MODIFY** the judgment to show Defendant's Plea to Motion to Revoke was "True" to allegations J, L, N, P, and S.

We **DELETE** the following sentence: The Court **FINDS** Defendant has violated the conditions of community supervision as set out in the State's Original Motion to Revoke Community Supervision as follows: <u>See attached Motion to Revoke Community Supervision</u>.

We **ADD** the following sentences: The Court **FINDS** Defendant has violated the following conditions of community supervision as set out in the State's Original Motion to Revoke Community Supervision: <u>A (assault), J, L, N, P, and S.</u> The State abandoned allegation A (operating a motor vehicle in a public place while intoxicated).

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 26th day of February, 2020.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JOSE ANTONIO JUAREZ, Appellant

No. 05-18-01177-CR  V.

THE STATE OF TEXAS, Appellee

On Appeal from the 282nd Judicial District Court, Dallas County, Texas
Trial Court Cause No. F-1334001-S.
Opinion delivered by Justice Nowell.
Justices Myers and Osborne participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

We **MODIFY** the judgment to show Defendant's Plea to Motion to Revoke was "True" to allegations J, L, N, P, and S.

We **DELETE** the following sentence: The Court **FINDS** Defendant has violated the conditions of community supervision as set out in the State's Original Motion to Revoke Community Supervision as follows: <u>See attached Motion to Revoke Community Supervision</u>.

We **ADD** the following sentences: The Court **FINDS** Defendant has violated the following conditions of community supervision as set out in the State's Original Motion to Revoke Community Supervision: <u>A (assault), J, L, N, P, and S.</u>  The State abandoned allegation A (operating a motor vehicle in a public place while intoxicated).

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 26th day of February, 2020.



# Court of Appeals
# Fifth District of Texas at Dallas

# JUDGMENT

JOSE ANTONIO JUAREZ, Appellant

No. 05-18-01178-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the 282nd Judicial District Court, Dallas County, Texas
Trial Court Cause No. F-1433730-S.
Opinion delivered by Justice Nowell.
Justices Myers and Osborne participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

We **DELETE** the Court Costs of $424.00.  Court Costs are $0.00.

We **MODIFY** the judgment to show Defendant's Plea to Motion to Revoke was "True" to allegations J, L, N, P, and S.

We **DELETE** the following sentence: The Court **FINDS** Defendant has violated the conditions of community supervision as set out in the State's Original Motion to Revoke Community Supervision as follows: <u>See attached Motion to Revoke Community Supervision</u>.

We **ADD** the following sentences: The Court **FINDS** Defendant has violated the following conditions of community supervision as set out in the State's Original Motion to Revoke Community Supervision: <u>A (assault), J, L, N, P, and S.</u>  The State abandoned allegation A (operating a motor vehicle in a public place while intoxicated).

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 26th day of February, 2020.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JOSE ANTONIO JUAREZ, Appellant

No. 05-18-01179-CR            V.

THE STATE OF TEXAS, Appellee

On Appeal from the 282nd Judicial District Court, Dallas County, Texas
Trial Court Cause No. F-1433734-S.
Opinion delivered by Justice Nowell.
Justices Myers and Osborne participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

We **MODIFY** the judgment to show Defendant's Plea to Motion to Revoke was "True" to allegations J, L, N, P, and S.

We **DELETE** the following sentence: The Court **FINDS** Defendant has violated the conditions of community supervision as set out in the State's Original Motion to Revoke Community Supervision as follows: <u>See attached Motion to Revoke Community Supervision</u>.

We **ADD** the following sentences: The Court **FINDS** Defendant has violated the following conditions of community supervision as set out in the State's Original Motion to Revoke Community Supervision: <u>A (assault), J, L, N, P, and S.</u>  The State abandoned allegation A (operating a motor vehicle in a public place while intoxicated).

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 26th day of February, 2020.



# Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

JOSE ANTONIO JUAREZ, Appellant

No. 05-18-01180-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 282nd Judicial District Court, Dallas County, Texas
Trial Court Cause No. F-1433735-S.
Opinion delivered by Justice Nowell.
Justices Myers and Osborne participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

We **DELETE** the Court Costs of $409.00.  Court Costs are $0.00.

We **MODIFY** the judgment to show Defendant's Plea to Motion to Revoke was "True" to allegations J, L, N, P, and S.

We **DELETE** the following sentence: The Court **FINDS** Defendant has violated the conditions of community supervision as set out in the State's Original Motion to Revoke Community Supervision as follows: See attached Motion to Revoke Community Supervision.

We **ADD** the following sentences: The Court **FINDS** Defendant has violated the following conditions of community supervision as set out in the State's Original Motion to Revoke Community Supervision: A (assault), J, L, N, P, and S.  The State abandoned allegation A (operating a motor vehicle in a public place while intoxicated).

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 26th day of February, 2020.